ADELBERT E. IRELAND, Respondent, *v.* C. CLINTON GARD-
NER, as Receiver, etc., Appellant.

*Supreme Court, Fifth Department, General Term, October* 19, 1889.

*Negligence. Question of fact.*—The submission of this case to the jury to
find a verdict for the plaintiff upon the sole ground that the guard rail
was not blocked was held to be error.

Appeal from a judgment entered in favor of the plaintiff
on the verdict of a jury, for $30,000, for personal injuries,
rendered at the Monroe circuit, and from an order denying
the defendant's motion for a new trial.

The facts appear in the dissenting opinion.

*William S. Oliver*, for respondent.

*John A. Milburn*, for appellant.

The majority of the court held that the submission of the
case to the jury to find a verdict for the plaintiff upon the
sole ground that the guard rail was not blocked, was error,
under the case of Appel *v.* The Railroad Co., 111 N. Y. 550.

MACOMBER, J. (dissenting).—At the time of receiving
the injuries for which this action is brought, the plaintiff
was engaged in what is known as breaking up a train, in the
yards of the defendant near the city of Rochester. This
process consisted of uncoupling and taking out freight cars
from the train, and shifting them respectively to their proper
places on other tracks. The plaintiff was required to go
between the cars while the train was in motion, in order to

disconnect them by pulling the coupling pin. Taking hold
of a pin for such purpose, he found that he could not raise
it, because it was bent; whereupon, he reached forward to
pull the other pin in the opposite coupling. At this in-
stant, one of his feet went into the wedge-shaped space be-
tween the main rail and guard rail, where he was caught and
held while the car threw him down, the wheel crushing his
left leg and arm, which subsequently had to be amputated,
the one at the thigh and the other at the shoulder.

At the time of receiving these injuries, the plaintiff had
worked at this particular business three or four days only.
For some time prior thereto, he had been engaged in coup-
ling cars, which required him simply to couple the coming
car to the car standing still; while the pulling of pins in the
process of cutting out cars and shifting them from one track
to another required him to enter between the moving cars
and to pull the pins while they were thus in motion. A
coupler was required only to step in between the standing
car and the coming car, and drop the pin when the moving
car came up. In that work, there was no requirement for
the operator to walk upon the tracks. The plaintiff had no
experience with this guard rail which caused his injuries, be-
fore the time when this accident happened. He had no par-
ticular knowledge of the location of the guard rail. He had
no experience in cutting out a car or pulling a pin over such
a dangerous place. His attention never had been called to
the fact that this guard rail and frog or that any guard rails
or frogs were dangerous.

The main exception on this appeal arises upon the submis-
sion by the trial judge of the question to the jury whether
the danger arising from the position of those two rails, and
the want of a " block " between them to prevent the entry
of a foot, was apparent and obvious so that the plaintiff was
chargeable with knowledge of the existence of the danger.
Under the facts testified to by the plaintiff, in which he is
in part corroborated by the witnesses called by the defendant,

the jury was justified in reaching a conclusion favorable to the plaintiff upon this proposition. While actually engaged in this work he could not have seen the place where his foot was caught.

The decision of Appel *v.* Railroad Company, 111 N. Y. 550, is pressed upon our attention as being an authority against the right of the plaintiff in this action to recover for the injuries so received by him. In that case, however, it appeared that the plaintiff's intestate had been in the defendant's employ for some years, and for quite a long time in and about the yard where the accident happened, and was actually acquainted with the frog and knew that it was not "blocked." Under these circumstances, the court held that in accepting and continuing in the employment he assumed the hazard of all known and obvious dangers, and that he was chargeable with notice of the difficulty in removing the foot when caught in a frog, and of the danger to be apprehended therefrom; and therefore that a cause of action was not made out and a refusal to nonsuit was error.

The court there says : " We feel quite sure that one who worked among these rails, and daily for months and years, necessarily was familiar with their shape and general construction, and must have known of the difficulty of removing a foot caught in the space between the rails, and the danger of the situation arising therefrom. We cannot believe that anyone could thus work, and yet, while familiar with the frog, its purpose and use, and with its apparent form and condition, and that it was 'unblocked' (with all of which knowledge the court below correctly charged the deceased), could still be ignorant that there was danger to be apprehended by getting his foot caught between the rails, and that there was a liability to have it thus caught. * * * We can have no doubt that the danger was obvious and known to the deceased."

In the case before us, however, the chief employment of

the plaintiff had been and was in the south end of the yards
of the defendants, a place which was between 80 and 100
rods from the spot where he was injured, which is shown to
be at the north end of the yard.    The business to which the
plaintiff had been put was new to him.    His attention had
not been called to its peculiar dangers.    Under these cir-
cumstances, it seems to me that the case is distinguishable
from that of Appel, and that it was not error for the trial
judge to submit the question to the jury whether the
apparent and obvious condition of the tracks gave him knowl-
edge of its dangerous character.    The question of want of
ordinary care was in this instance, under the testimony, one
for their consideration.    Their decision of that question is
supported by sufficient evidence.    I am unable to say, there-
fore, as it was said by the court of appeals in the Appel case,
that the dangers were apparent to the plaintiff, and that he
was necessarily chargeable with knowledge thereof.

Furthermore had the pin in the coupling, which the plaint-
iff first seized, been in good condition, so as to release from
the coupling, in all probability the plaintiff would have
avoided those injuries, but as the same did not yield to his
clutch, on account of its being bent, he was required to
resort to the coupling on the other car, which took some little
time, so long, indeed, as that he traversed sixty-five feet
while so engaged in trying to wriggle out the pin.    It
appears, therefore, that the plaintiff entered between the cars
at a point where there was no danger by reason of the rail
and the frog, and under ordinary circumstances would have
come out without injury before reaching this particularly
dangerous spot.    While going along with the cars in motion he
could not see that his foot was likely to be put into this
dangerous place.    This fact, in connection with his want of
knowledge or information of the location of the " unblocked"
frog, did, in my judgment, justify the jury in rendering
a verdict for the plaintiff, in the absence of evidence of a
proper inspection of the coupling.

The only other question in the case that merits comment is the proposition that the damages were excessive. There is nothing to indicate that the jury, in rendering this verdict, were actuated by any prejudice or passion; on the contrary, while thus liberal in their award which they have made, they cannot be said to have gone beyond actual damages. The injuries incapacitated the plaintiff for work; he was rendered helpless; he even at the time of the trial required assistance in locomotion; he not only suffered the pains of the injuries and the subsequent amputations, but much of such pain has followed him to the present time, and will attend him while he lives. The evidence shows that before the injury he was receiving forty-five dollars a month as wages; that he was a strong, healthy, whole man, from which condition he was dismembered nearly to a torso. Under these circumstances I am unable to say that the sum awarded was excessive.

I have examined the several exceptions in the case not hereinbefore considered, and do not find in them any error that would warrant a reversal of the judgment.

The judgment should be affirmed.

Judgment and order reversed and new trial granted, costs to abide event.

BARKER, P. J., and DWIGHT, J., concur; MACOMBER, J., dissents.