CARL KERN, Repondent, *v.* DECASTRO AND DONNER SUGAR REFINING COMPANY, Appellant.

A master, in the performance of the duty he owes to his servants, is not bound to furnish the best known appliances, but such only as are reasonably safe.

The test is not whether he has omitted to do something which he could have done, or whether better machinery might have been obtained, but whether his selection was reasonably prudent and careful, and whether the machinery provided was in fact adequate and proper for the use to which it was to be applied.

The omission of safety appliances upon a freight elevator, which never carries passengers, and from which, and from the well of which, the master excludes his servants, does not serve to establish negligence on his part, in case one of them is injured by an accident to the elevator.

In an action to recover damages for injuries to an employe, received from the breaking down of an elevator, it appeared that the elevator was used for carrying goods from the cellar to the third floor of defendant's sugar refinery; no person was allowed to ride upon it; a bucket or wagon with wheels was run on rails on the platform of the elevator, where the wheels rested in small notches. At the time of the accident, the bucket slipped from its place on the rail and wedged the platform against the walls of the elevator so as to stop it. Plaintiff's evidence tended to show that this had occurred before, and that the notches in the rail had worn smooth so that the wheels sometimes slipped out and thus wedged the platform. This difficulty could have been removed by the engineer without danger to anyone by reversing the movement of the cable; the platform was released without doing this, and in consequence it fell and one of the cables and the wheel over which it passed were broken, a piece of the wheel shot out of the elevator well striking and injuring plaintiff who was at work on the third floor.

*Held*, that the action was not maintainable, as no negligent omission of duty on the part of defendant to its employes was shown; and that the proximate cause of the injury to plaintiff was the negligence of the engineer, a co-servant

(Argued October 29, 1890; decided December 2, 1890.)

APPEAL from judgment of the General Term of the City Court of Brooklyn, entered upon an order made April 22, 1889, which affirmed a judgment in favor of plaintiff entered upon a verdict and affirmed an order denying a motion for a new trial.

This action was brought to recover damages for injuries received by plaintiff while in defendant's employ, by the falling of an elevator used in its refinery.

The facts, so far as material, are stated in the opinion.

*Joseph A. Burr, Jr.*, for appellant. The defendant did not owe to the plaintiff the duty of furnishing the best known or the best conceivable appliances. They were only bound to furnish those reasonably safe for the purpose for which they were to be used, and which were usually employed at the time the machine was constructed. They were at liberty to carry on business with an old machine not furnished with all the safeguards attached to newer machines. (*Burke* v. *Witherbee*, 98 N. Y. 562; *Marsh* v. *Chickering*, 101 id. 396; *Sweney* v. *B. & J. E. Co.*, Id. 520.) The object of the dog and ratchet being to hold the elevator if the rope broke, in an elevator constructed and used as this was, the chances that, if anything did break or give way, any injury to life or limb would result were so remote and almost impossible that defendant was not bound to guard against such danger. (*Loftus* v. *U. F. Co.*, 84 N. Y. 455; *Laflin* v. *B. & W. S. R. R. Co.*, 106 id. 336; *Hubbell* v. *City of Yonkers*, 104 id. 439; *Morse* v. *N. Y. C. R. R. Co.*, 39 Hun, 414; 103 N. Y. 686; *Stringham* v. *Stewart*, 111 id. 188.) The absence of safety brakes was not the proximate cause of the injury. Their absence made the elevator unsafe in the case at bar only

when negligently or carelessly used, in which case the master is not liable. (*Stringham* v. *Stewart*, 111 N. Y. 188; *Morse* v. *N. Y. C. R. R. Co.*, 39 Hun, 414; *Hussey* v. *Coger*, 112 N. Y. 614; *Couse* v. *N. Y., L. E. & W. R. R. Co.*, 117 id. 652; *Hall* v. *C. R. R. Co.*, 49 Hun, 373; *Whitaker* v. *D. & H. C. Co.*, Id. 400; *Murtagh* v. *N. Y. C. R. R. Co.*, Id. 456.) If the absence of safety brakes was a defect in the machinery, and was the proximate cause of the injury, the plaintiff, knowing of their absence, took the risk. (*Hickey* v. *Taafe*, 105 N. Y. 26; *Monaghan* v. *N. Y. C. & H. R. R. R. Co.*, 45 Hun, 119; *Cahill* v. *Hilton*, 106 N. Y. 518; *Roeder* v. *C. C. Co.*, 19 J. &. S. 134; *Burke* v. *Witherbee*, 98 N. Y. 562; *DeForest* v. *Jewett*, 23 Hun, 492; 88 N. Y. 264; *Wright* v. *D. & H. C. Co.*, 40 Hun, 343.) The proximate cause of the injury being the negligence of plaintiff's fellow-servants, to wit: the engineer and his assistants, in failing to take up the slack of the cable and in pulling the car loose and permitting the platform to fall, the fact that the engineer was a servant of a different or even of a higher grade than the plaintiff makes no difference in the application of the rule. (*Crispin* v. *Babbitt*, 81 N. Y. 516; *McCosker* v. *L. I. R. R. Co.*, 84 id. 87; *Burnett* v. *Taylor*, 18 Wkly. Dig. 4.) The trial judge erred in permitting Dr. Gray to testify as to the results of what he termed his subjective examination of the plaintiff, and in refusing to strike it out. (*Roche* v. *B., C. & N. R. R. Co.*, 105 N. Y. 204; *People* v. *Hawkins*, 109 id. 409.) The trial judge erred in not permitting defendant to examine Ruppert as to statements made by him at the last trial. (*Bullard* v. *Pearsall*, 53 N. Y. 230; *Melluish* v. *Collier*, 15 Ad. & El. [N. S.] 878; *People* v. *Kelly*, 113 N. Y. 652; *People* v. *Ricker*, 4 N. Y. Supp. 71; *Becker* v. *Koch*, 104 N. Y. 394; *Cox* v. *Eayres*, 55 Vt. 24; *Harley* v. *State*, 21 N. E. Rep. 645.) The court erred in refusing defendant's motion to strike out Dr. Gray's testimony as to future consequences of plaintiff's injury. (*Strohm* v. *N. Y., L. E. & W. R. R. Co.*, 96 N. Y. 305; *Eden* v. *Lorillard*, 19 id. 299.)

*Mirabeau L. Towns* for respondent.    Where defendants use an elevator for the purpose of elevating persons vertically a considerable distance, they are carriers of passengers and are liable for any defect in the machinery which is discovered upon a reasonable and careful examination and according to the best known test reasonably practical.    The same responsibility as to the care and diligence rests on them as on carriers of passengers by stage, coach or railway.    (*Tredwell* v. *Whittier*, Alb. L. J., Nov. 23, 1889, 417 ; *Brennan* v. *Reade*, 118 N. Y. 489 ; 100 id. 517 ; *Abel* v. *President, etc.*, 103 id. 581 ; *Slater* v. *Jewett*, 85 id. 61 ; *Sheehan* v. *N. Y. C. & H. R. R. R. Co.*, 91 id. 332 ; *Dana* v. *N. Y. C. & H. R. R. R. R. Co.*, 92 id. 639 ; Thomp. on Neg. 970, §§ 2, 6, 7 ; *Buzing* v. *Steinway*, 101 N. Y. 574 ; *Pantzar* v. *T. F. I. M. Co.*, 99 id. 368 ; 2 Thomp. on Neg. 944, 970, 972, §§ 3, 6, 7, 9 ; *Bashby* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 374 ; *Lilly* v. *N. Y. C. & H. R. R. R. Co.*, 107 id. 566 ; *Abel* v. *D. & H. C. Co.*, 103 id. 581.)    The defendant did not move to dismiss upon the ground that the accident was caused by the negligence of a fellow-servant, and cannot now raise that question upon appeal for the first time.    (*Castle* v. *Duryea*, 32 Barb. 480 ; *Binssee* v. *Wood*, 37 N. Y. 526 ; *Thayer* v. *Marsh*, 75 id. 340 ; *Schile* v. *Brokhahus*, 80 id. 614 ; *Von Derlip* v. *Keyser*, 68 id. 443 ; *Schofield* v. *Harnandez*, 47 id. 315.)    Where the master has furnished a dangerous and defective machine and appliances, he is not excused from liability for injury to his servant, which would not have happened had the machinery been safe and suitable, by the fact that the negligence of a fellow-servant co-operated in producing the injury, and this, although managed by the exercise of care and caution, might have been operated so as not to cause the injury.    (*Stringham* v. *Stewart*, 100 N. Y. 516 ; *Sheridan* v. *B. C. & N. R. R. Co.*, 36 id. 39 ; *Webster* v. *H. R. R. R. Co.*, 38 id. 260 ; *Barrett* v. *T. A. R. R. Co.*, 45 id. 628 ; 94 id. 621 ; *Pollett* v. *Long*, 56 id. 200 ; *Perry* v. *Lansing*, 17 Hun, 34 ; *Young* v. *C. R. R. Co.*, 30 Barb. 229.)

FINCH, J. The plaintiff failed to establish any actionable negligence on the part of the defendant. We have had occasion quite recently to say that the master, in performance of his duty to his servants, is not bound to furnish the best known appliances, but such only as are reasonably safe; that the test is not whether he has omitted to do something which he could have done, nor whether better machinery might have been obtained, but whether his selection was reasonably prudent and careful, and whether the machinery provided was in fact adequate and proper for the use to which it was to be applied. (*Stringham* v. *Hilton*, 111 N. Y. 195.) Tested by these rules the evidence made it very clear that the machinery was adequate to its proper use and reasonably safe.

The plaintiff's injury was occasioned by the fall of an elevator, and the principal defect alleged is the want of some safety appliance, like a ratchet and dogs, to prevent such fall if the cable should break. But the elevator was not constructed or used for carrying passengers. Nobody ever rode upon it even for some temporary purpose. It was so protected at all points that a person could not enter it without deliberately climbing over barriers placed in his way. No consent to any such use, and in fact no such use by anyone was indicated in the proof. The purpose for which it was constructed and operated was to lift bone-black or what is called "char" from the cellar to the third floor. The bucket or wagon was suspended from wheels which moved upon a rail fixed beneath the roof of the elevator and matched a similar rail in the cellar and on the third floor. When the elevator was down the bucket was pushed along the cellar rail upon that in the elevator where the wheels rested in small notches made for that purpose, and when the elevator reached the third floor, it was stopped at a point where its own rail matched that outside and the bucket was drawn on its wheels to its destination. It is evident that such an elevator, relatively to the servants using it, could not be deemed dangerous, defective or unsafe, for lack of safety appliances to break or prevent its possible fall. The bone-black might be spilled or the bucket broken, but the

servants using the elevator had no right to be in it or under it, and the possible breaking of the cable suggested no possibility of danger to them.   Two experts in the construction of similar machinery were sworn on behalf of the plaintiff. Each testified that the screw gear which' operated the elevator was the best for the purpose, and pointed out no defect in the machinery, except the lack of a ratchet and dogs or some similar appliance.   And one of them admitted that he placed such appliance upon his elevators, because, although made to carry freight, they were used quite commonly to carry passengers who would ride upon them.   But this elevator, in view of its purpose and use, could not reasonably be supposed to put human life in danger by its fall, and it was not negligence to omit a precaution applicable only to a situation which did not in fact exist.

What happened was in one respect so extraordinary, that nobody could have foreseen it, and no prudence could have anticipated the need of guarding against it.   The bucket slipped from its place on the rail and wedged the platform against the walls of the elevator well in such manner as to stop it and to hold it fast.   Something of this sort had occurred before, but so seldom, in comparison with the usual action of the machine, as to indicate, instead of a defect in it, more or less of carelessness or haste in its operation.   The stoppage of the platform put nobody in peril, and the difficulty could have been removed with perfect safety to machine and operators.   When the platform stopped, prudence on the part of the engineer required that he should first, by the movement of the cable drum, take up the slack which had accumulated upon the stoppage of the platform.   To release the latter without so doing, was to make the platform fall the length of the slack and put a severe and sudden strain upon the cables.   This the engineer did, and from that strain one of the cables and wheel over which it passed were broken. Even then no one could have reasonably anticipated that fragments would have fallen elsewhere than in the well or periled the safety of persons outside of it.   But that was what hap-

pened.   One piece of the broken wheel fell into the cellar, but another, striking or deflected by some obstacle, shot out of the well at the third floor, and struck plaintiff on the back of the head.   Obviously, the proximate cause of the injury was the negligent act of the engineer.   Nothing in or about the machine was an efficient cause of the accident, or implied negligence on the part of the master.   And even so far as the engineer is concerned his act although imprudent was not one which anyone could have forseen involved danger to the servants.

I have no doubt that the omission of safety appliances upon a freight elevator which never carries passengers, and from which and from the well the servants are excluded, does not serve to establish negligence on the part of the master, but the respondent refers to some other facts as pertinent to that inquiry.

He says the elevator had several times fallen.   What is meant by that, is that occasionally the brake which controlled the drum slipped, and the platform struck heavily upon the cellar floor, or the rope on the drum overwound another coil and slipped, producing a jar or jerk.   These things had nothing whatever to do with the accident which happened, and had never occasioned any serious injury to the elevator itself, and certainly never threatened or in any manner endangered the safety of the operators.

But it is said the notches in the elevator rail made for the bucket wheels to rest in had worn smooth, so that the wheels sometimes slipped out and thereby the platform became wedged.   There is some evidence to that effect, though it is quite as probable that in the few instances specified in the proof, the wheels were not in the notches though the operator supposed that they were.   But assuming the utmost which it is possible to claim, it is still true that the elevator was adequate to the purpose for which it was used, and was not only reasonably safe for the servants who operated it, but so entirely so that no prudence could have anticipated any danger to the workmen.   It appears that no notice was ever given to the master of the wearing of the notches, and that as matter of

fact they almost invariably and in the vast majority of instances answered their purpose. There was nothing in the facts to indicate to the master, if it knew them, that the safety of the servants was endangered or the elevator inadequate to its ordinary duty. We are, therefore, of opinion that plaintiff ought not to have recovered.

The judgment should be reversed and a new trial granted with costs to abide the event.

All concur.

Judgment reversed. _____