CHARLES SPENCER, AS ADMINISTRATOR OF THE ESTATE OF ROBERT J. SPENCER, DECEASED, RESPONDENT, *v.* THE NEW YORK CENTRAL AND HUDSON RIVER RAIL-ROAD COMPANY, APPELLANT.

*Unblocked railroad frog* \* — *not negligence* per se.

The mere operation of a railroad without blocking all the frogs on its line does not constitute negligence.

In the absence of proof that such blocking was necessary, or at least proper or in general use upon other roads, neither a court nor a jury is justified in finding that an omission by a railroad company to block all the frogs on its line constitutes negligence entitling an employee to recover for injuries sustained by his catching his foot in an unblocked frog.

Hence, in an action against a railroad company to recover the damages arising out of the death of a brakeman, caused by his catching his foot in an unblocked frog while coupling freight cars in the day-time, where the evidence showed that he had been in the employ of the company for such a length of time, and engaged in the performance of such duties as rendered it manifest that he must have known that a large portion of the frogs on the road was not blocked; that he had been employed around the particular frog in question for an hour and a half before the injury, and that the frog was in plain sight, so that its situation and character were apparent to ordinary observation, and there was nothing in the evidence which would justify a jury in finding that a frog was an unsafe or dangerous appliance when properly located and properly used, or that it was not reasonably safe for the purpose for which it was designed:

*Held*, that a nonsuit should have been granted.

APPEAL by the defendant, the New York Central and Hudson River Railroad Company, from a judgment of the Supreme Court, on a verdict for $1,800 rendered on a trial at the Onondaga Circuit, entered in the Onondaga county clerk's office November 23, 1891, and from an order denying the defendant's motion for a new trial made on the minutes of the trial judge and entered in said clerk's office November 13, 1891.

---

\* See, *post*, page 205.

*Frank H. Hiscock*, for the appellant.

*T. K. Fuller*, for the respondent.

MARTIN, J. :

This action was to recover damages sustained by the death of the plaintiff's intestate, alleged to have been caused by the defendant's negligence in not blocking a frog, in which the intestate's foot was caught, and he was run over and killed by the cars. He was employed by the defendant as a brakeman on its railroad, and engaged in coupling cars at its station at Clyde, at the time he was killed. The accident, occasioning his death, occurred December 14, 1889. The evidence tended to show that it occurred by the intestate's foot being caught between the rails or tracks near or in the frog, which connected one of the main tracks with a side-track.

The plaintiff claimed that there should have been blocks of wood placed in the opening of the frog, or between the rails, and that if blocked the accident would not have occurred. The plaintiff proved that the defendant had blocked some of its frogs in its larger freight yards, where much shifting and coupling was done, but had never blocked any at the other stations along its road, including the one where the accident occurred. The plaintiff's intestate had been in the employ of the defendant during a portion of each year for several years prior to the accident, usually commencing his work in the fall and continuing until spring, and during a portion of the time he had lived across the road from the defendant's yard, at Dewitt. During the time of his employment he had been engaged chiefly in running upon through freight trains, between Dewitt and Buffalo and Dewitt and Suspension Bridge. These trains, however, were accustomed to do more or less local business, stopping at the way stations on the road. As such brakeman he was also engaged in the yards at Dewitt and Buffalo helping make up trains, and where they did local business he took part in switching and coupling cars at way stations.

He entered upon his last employment as such brakeman about four weeks before he was killed, and commenced to run upon the local freight the day previous to his death. He took the train at Lyons and ran to Rochester. On the next day he started on his

return trip and reached Clyde, where he was killed. During these two days he had stopped at the various way stations between Lyons and Rochester going west, and between Rochester and Clyde coming east, doing switching and coupling cars at each of these stations. There were six way stations where coupling and switching were done on the trip west, and seven or eight on the trip east, including the station at Clyde. He had been at work at the station where the accident occurred, and around and near the frog where he was injured, from an hour to an hour and one-half before the accident.

There was no evidence that the frog where the accident occurred was different from those in general use, or that it and the track around it were not in a perfect state of repair. There was a switch nearly opposite, which plainly indicated the location of the frog. Indeed, it was assumed upon the trial that the plaintiff's intestate must have known its location.

Snow had been falling and the wind had been blowing some that day, but the snow had not fallen to a sufficient depth to cover the frog, nor was the storm severe enough to obstruct the intestate's vision. The accident happened in broad day-light, and there was nothing to prevent him from seeing that the frog was not blocked. There were a great number of frogs upon that part of the defendant's road over which the plaintiff's intestate had passed, and the larger portion of them was not blocked.

Several years prior to this accident the defendant had established and promulgated a rule requiring its men who were engaged in coupling freight cars to use coupling sticks instead of coupling by hand, and a supply of them was kept on hand in the defendant's yard into which the decedent ran, and in the caboose of the train on which he was working when killed. There was, however, proof which tended to show that the employees of the defendant generally made couplings without the use of sticks. The decedent was attempting to couple cars with his hands without the use of a coupling stick when the accident occurred. There was no evidence that any other railroad company blocked the frogs upon its road, or that any similar accident had happened upon defendant's road.

At the close of the plaintiff's evidence the defendant moved for a nonsuit upon the grounds that no negligence of the defendant had been established ; that it was not shown that the decedent was

free from contributory negligence ; and that his injuries arose from risks which were incident to his employment and assumed by him. This motion was denied. It was again renewed at the close of the evidence and again denied. To both these rulings the defendant excepted. The case was submitted to the jury, which found for the plaintiff.

The only ground upon which the plaintiff bases his right to recover is the omission of the defendant to block the frog at the place where the accident occurred. As no special reason was shown why the frog at that place should have been blocked that did not equally apply to every other on defendant's road, the question presented is, whether it owed to its servants the duty of blocking them at all the stations or side tracks.

A master in the performance of his duty to his servants, is not bound to furnish the best known appliances and machinery, or the safest place in which to do their work, but such only as are reasonably safe. The test is not whether the master has omitted to do something which he might have done, but whether the machinery, appliances and place where the work was to be done were reasonably safe and proper for the use to which they were applied. (*Burke* v. *Witherbee*, 98 N. Y., 562; *Marsh* v. *Chickering*, 101 id., 396; *Bajus* v. *S. B. and N. Y. R. R. Co.*, 103 id., 312; *Stringham* v. *Hilton*, 111 id., 188; *Kern* v. *De Castro and D. S. R. Co.*, 125 id , 50.)

A servant who enters into an employment which is hazardous assumes the usual risks of the service, and those which are apparent to ordinary observation. If he accepts service with knowledge of the character and position of the machinery, appliances and place where he is to do his work, he takes the risk of such perils as are incident to their use in their then condition and are apparent, and cannot call upon the master to make alterations to secure greater safety. (*Gibson* v. *Erie Ry. Co.*, 63 N. Y., 449; *DeForest* v. *Jewett*, 88 id., 264; *Powers* v. *N. Y. L. E. and W. R. R. Co.*, 98 id., 274; *Sweeney* v. *Berlin & Jones Envelope Co.*, 101 id., 520; *Anthony* v. *Leeret*, 8 N. Y., St. Rep., 542; *Hickey v. Taaffe*, 105 N. Y., 26; *Williams* v. *D. L. and W. R. R. Co.*, 116 id., 628; *Davidson* v. *Cornell*, 132 id., 228.)

When an appliance or machine not obviously dangerous has been in daily use for a long time, and has uniformly proved adequate,

safe and convenient, its use may be continued without the imputation of negligence or carelessness. (*Stringham* v. *Hilton*, 111 N. Y., 188.)

A master's liability to his servant for injuries received in the course of his employment is based upon the personal negligence of the employer, and the evidence must establish personal negligence on his part, or what is equivalent thereto, to justify a verdict, and he is entitled to the benefit of the presumption that he has performed his duty until the contrary appears. (*Cahill* v. *Hilton*, 106 N. Y., 512.)

In *Appel* v. *Buffalo, New York and Pennsylvania Railroad Company* (111 N. Y., 550), the plaintiff's intestate was a switchman in defendant's yard, and while engaged in his employment, caught his foot in a frog, and was run over and killed. It was claimed that blocks of wood might have been placed in the openings of the frog, and thus have prevented the accident. It appeared that decedent had been in defendant's employ for some years, and for quite a length of time in and about the yard where the accident happened, and was acquainted with the frog, and knew it was not blocked. In that case, it was held that, in accepting and continuing in the employment, the decedent assumed the hazard of all known and obvious dangers, and was chargeable with notice of the difficulty in removing the foot when caught in a frog, and of the danger to be apprehended therefrom, and, therefore, the cause of action was not made out, and a refusal to nonsuit was error.

Again, in *Ireland* v. *Gardner* (26 N. Y. St. Rep., 895), the plaintiff, while uncoupling cars on defendant's road, caught his foot in a frog and was thrown down and run over, causing amputation of a leg and arm. In an action to recover for such injuries, it was held that the submission of the case to the jury to find a verdict for plaintiff on the sole ground that the guard-rail was not blocked, was error.

In *Haas* v. *Buffalo, New York and Pennsylvania Railroad Company* (40 Hun, 145), the plaintiff was employed by the defendant in its yard. While thus employed, his heel slipped in between the guard-rail and the main track opposite a frog, and before he could extricate himself, the car passed over him cutting off his legs. The plaintiff knew, at the time of entering the defendant's service,

that blocks were not used in its yard. The defendant requested the court to charge, that plaintiff, having entered defendant's service with its guard-rails unblocked, and they being in plain sight, and the plaintiff having continued in the service with the guard-rails in that condition, he assumed the apparent risks incident to their existence in the performance of his duty, and could not recover, and that the accident which caused the plaintiff's injury was, under the circumstances of the case, a risk which he assumed, and for which the defendant was not liable. This request was refused, and the General Term held that the court erred in refusing so to charge.

Applying the principles of these authorities to the facts in this case, we do not see how the judgment can be upheld. That the tracks, cars and other machinery in use upon the defendant's road at the time and place of the accident were not proper, or in a proper state of repair, is neither claimed nor proved. As we have already seen, there was no evidence that blocks were in general use by the defendant, or that they were in general, or even limited use upon other railroads, or that any accident had ever occurred which was occasioned by the omission to block the frogs on the defendant's road, or that any such accident had ever occurred from that cause on any other road, or that it was necessary or proper to block the frogs on a railroad.

While a court might, perhaps, take judicial notice that frogs on a railroad constitute an element of some danger to persons walking over them, it cannot, we think, assume that the mere operation of a railroad, without blocking all the frogs on its line, constitutes negligence. Therefore, in the absence of proof that such blocking was necessary or, at least, proper, or in general use upon other roads, neither a court nor a jury would be justified in finding that such an omission constituted negligence which would entitle an employee to recover for injuries sustained by having caught his foot in a frog. There is nothing in the evidence, or in the construction of a frog, which would justify a jury in finding that it was an unsafe or dangerous appliance when properly located and properly used, or that it was not reasonably safe for the purpose for which it was designed.

Moreover, the plaintiff's intestate had been in the defendant's employ for such a length of time, and been engaged in the perform-

ance of such duties as renders it manifest, that he must have known that a large portion of the frogs on defendant's road was not blocked. We think the evidence was not sufficient to justify the jury in finding that the decedent was ignorant of that fact.

We also find that the decedent had been employed around and near the frog where this accident occurred, for an hour or an hour and one-half before his injury. The frog was in plain sight, and whether it was blocked or not, could have been readily determined by the exercise of the slightest vigilance on his part. It was not only broad day-light, but there was nothing to prevent the intestate from seeing its condition at a glance. Under these circumstances, he must have known and fully understood that this frog was not blocked, unless he neglected to exercise the slightest diligence or make the slightest effort to ascertain its situation.

We think the evidence shows clearly that the decedent had knowledge of the character and situation of this frog, or, at least, that its situation and character were apparent to ordinary observation, and, consequently, he took the risk of the perils which were incident to its use.

These considerations lead to the conclusion that the court erred in denying the defendant's motion for a nonsuit, and for this error the judgment should be reversed.

This conclusion renders it unnecessary to consider the question whether the decedent was guilty of contributory negligence in not using a coupling stick at the time of his injury.

The judgment and order must be reversed on the law and facts and a new trial granted, with costs to abide the event.

HARDIN, P. J., and MERWIN, J., concurred.

Judgment and order reversed on the law and facts and a new trial ordered, with costs to abide the event.