HALL *v.* MURDOCK.

1. PERSONAL INJURIES—DEFECTIVE ELEVATOR—CONTROL OF PROP-
ERTY—DEFENDANT AS WITNESS—CONTRADICTORY TESTIMONY.

Plaintiff was injured by the falling of a freight elevator. In an
action against the owner of the premises and her husband,
the wife denied any liability, on the ground that the husband,
who had a life interest in the premises, put in the elevator and
controlled the property. Being called as a witness for plain-
tiff, she testified that, after the property was deeded to her,
her husband was to have charge of the business and collect
the rents, but that he was not to have the rents. Upon cross-
examination by her own counsel, she stated that she was mis-
taken in giving such testimony, and that the rents belonged
to her husband. *Held*, that the contradictory statements jus-
tified the submission to the jury of the question of her lia-
bility.

2. SAME—NEGLIGENCE—QUESTION FOR JURY.

In an action by one who was injured by the falling of an
elevator, due to the breaking of the cable, evidence that the
cable was considerably worn when purchased for use in the
elevator in question, that it had been in use there for two
years, and that the proprietor had made statements to the
effect that the cable was worn out, and that he would have to
get a new one, was sufficient to go to the jury on the ques-
tion of the proprietor's negligence.

3. EXPERT WITNESSES—COMPETENCY.

A witness who is shown to have some knowledge of and to have
had some experience with elevators and safety devices may
testify as an expert in an action for injuries caused by the
fall of an elevator, although he has never had any experi-
ence with an elevator with a safety device similar to that
used in the elevator in question.

4. ELEVATORS—SAFETY APPLIANCES—WHEN NECESSARY.

The mere fact that the occupants of a business block occa-
sionally ride upon a freight elevator, which has nothing in its
construction or appearance to indicate that it was intended
for the conveyance of passengers, does not impose upon the
proprietor the duty to equip it with safety appliances with
the same care that would be required in the case of a pas-
senger elevator.

5. SAME—INJURY TO PASSENGER ON FREIGHT ELEVATOR—LIABIL-
ITY OF OWNER.

   The owner of a freight elevator who permits or invites another
       person to ride thereon does not guarantee that it is equipped
       with the most approved appliances in use on passenger ele-
       vators, and is not liable for an injury caused by the fall of
       the elevator if he has provided appliances in common use in
       freight elevators, and has exercised reasonable care in inspect-
       ing, repairing, and managing it.

6. SAME.

   The proprietor of a freight elevator, who ought to have known
       of a defect in the cable rendering it dangerous for use, is not
       relieved from liability for an injury to one whom he invited
       to ride, by the mere fact that he also was riding at the time
       of the injury, and exercised the same care for the passenger's
       safety that he did for his own.

7. EVIDENCE — READING FROM MEDICAL WORKS — PREJUDICIAL
ERROR.

   To permit plaintiff's counsel, in an action for personal injuries,
       to read to the jury extracts from medical works, in connec-
       tion with the cross-examination of experts called by defend-
       ant to refute plaintiff's theory of the cause of his physical
       condition, is prejudicial error.

8. SAME—WHEN PERMISSIBLE—IMPEACHMENT OF WITNESSES.

   The only circumstances under which medical works can prop-
       erly be read in evidence are where the witness has based his
       opinions upon them, and has referred to them as authority.[1]

9. INSTRUCTIONS—ALLEGATION OF NEGLIGENCE—ISSUE.

   An instruction, in an action for personal injuries resulting
       from the fall of an elevator, which permits the jury to find
       the defendant to have been negligent in the maintenance of
       the elevator otherwise than in respect to the particular appli-
       ances claimed to have been defective, is erroneous.

Error to Calhoun; Smith, J.  Submitted June 8, 1897.
Decided September 14, 1897.

Case by Charles E. Hall against Gilson E. Murdock
and Sarah M. Murdock for personal injuries.  From a
judgment for plaintiff, defendants bring error.  Reversed.

---

[1] The use of medical books or scientific books as evidence is the
subject of an extensive note to *Union Pacific R. Co.* v. *Yates*,
( U. S. C. C. A.) 40 L. R. A. 553.

Tort for damages resulting from the fall of an elevator upon which plaintiff was riding. The elevator was in an annex at the rear of a block, running from the basement to the third floor. The first story was occupied as stores; the second as living rooms, some of which were occupied by the defendants, who were husband and wife; the third story was a large room used for the storing of goods and furniture. The claim of the plaintiff is that the defendant Sarah owned the title in fee, and that her husband (defendant Gilson) was her agent in the management and control of the building. Mrs. Murdock claimed that she had nothing to do with the construction of this evelator, and that her husband owned a life estate in the block, and rented and controlled it. Plaintiff had made a contract with the defendant Gilson for the storage of some of his household furniture in the third story, the consideration depending upon the amount of floor room occupied. The elevator was constructed and designed for the carrying of freight. There was nothing in its construction or appearance to indicate that it was intended for the conveyance of passengers. It was supplied with a safety device consisting of a large half-elliptic spring of steel, made of four plates, fastened on the under side of the cross-beam, and inclosed by a clamp attached to the cable. The lower end of the clamp was fastened around this spring in such a manner as to cause the weight of the car and its contents, when suspended, to rest on this spring, and bend it up to the beam. Its construction was such that, if the cable broke, the pressure on the spring would be released, and the spring would rebound to its half-elliptic form, and in so doing it moved a lever which set the safety brakes.

Two grounds of negligence were submitted to the jury: *First*, that the cable had become old and worn, and for that reason broke; and, *second*, that the safety device used was not such as experience had shown to be the most effective. The theory of the defense was that the cable parted in consequence of a piece of timber which, in some

way not accounted for, got between the cable and sheave wheel, on which the cable parted. Mr. Murdock, at the time the contract for storage was made, directed plaintiff to deliver the goods at the middle south door of the annex by setting them into the annex from the alley. Mr. Murdock was not present when the goods were delivered, which was Saturday. Plaintiff and his drayman, upon their own motion, elevated one dray load of goods to the third story. On the following Monday plaintiff went to the block, to see if his goods had been placed. He was informed that they had not been. His own testimony was to the effect that Mr. Murdock told him that he was lame, and could not handle them, and asked plaintiff to assist him; that plaintiff did so, and, at the direction of Mr. Murdock, placed the goods upon the car; that Mr. Murdock then invited plaintiff to go up on the elevator, which he did. Mr. Murdock was also upon the elevator, and started it, and, after going about 12 feet, the cable parted, and the elevator fell to the basement.

Plaintiff recovered verdict and judgment.

*John C. Patterson* (*H. E. Winsor*, of counsel), for appellants.

*Lyman B. Trumbull* and *Charles A. Blair*, for appellee.

GRANT, J. (*after stating the facts*). 1. Defendant Sarah contends that there was no evidence of negligence upon her part, for the reason that Mr. Murdock had a life interest in the premises; that he put in this elevator, received the rents, and controlled the property. The plaintiff introduced evidence to the effect that leases had been made out in her name, and signed by her. The plaintiff called Mrs. Murdock as a witness, and she testified that, after the property "was deeded to me, he [Mr. Murdock] was to have charge of the business. He was to collect rents. He was not to have the rents." Upon cross-examination by her counsel, she testified that she was

mistaken when she testified as above, and that the rents belonged to her husband. Under this testimony it was not error to leave the question of her liability to the jury, which the court did under proper instructions. She was a party in interest, and her contradictory statements were for the jury, not the court, to consider.

2. It is insisted that there was no evidence of negligence on the part of the defendants. We think there was evidence sufficient to submit the question to the jury whether the cable had become old and worn, and parted in consequence. The mere fact that it broke, under the decisions of this court, was no evidence of negligence. The cable had been in use when purchased by Mr. Murdock, and had been used by him about two years. One witness saw a piece of the cable as it was when purchased by Mr. Murdock, and testified that it was considerably worn. It is true, he did not testify that it was, in his opinion, sufficiently worn to be dangerous, but its condition in this respect was proper for the consideration of the jury in connection with the other testimony. Other witnesses also testified to statements made by Mr. Murdock to the effect that the cable was "worn out or played out;" that some of his tenants had used it bad, and pretty much spoiled it, and that he had got to get a new one. Under evidence of this character, we think the question was properly submitted to the jury.

3. A more doubtful question is presented as to negligence in the use of this safety device. The evidence of the defendants shows that it was in common use in the vicinity of Albion. The sole testimony against the device used was given by a witness named Holtgren, who was introduced as an expert. He testified that there were other devices, better than this, which had been in common use some years. He also gave evidence tending to show that, if the cable parted in a certain place, the device could not work. But on cross-examination he testified: "I never had any experience personally with this kind of an elevator. Never had any experience with

any elevator with spring safety device." He, however, had shown some knowledge and experience of elevators and safety devices, and we are not prepared to hold that his knowledge and experience were not sufficient to justify his testimony as an expert.

There was, however, no testimony to show that this device, which was once in common use, was not proper for an elevator intended solely for freight. It is true that there was testimony tending to show that the occupants of this building sometimes rode upon this elevator in raising and lowering their goods, but this did not constitute it a passenger elevator, or make it the duty of the defendants to have it constructed with the same care that would be required in the case of a passenger elevator. We are, therefore, of the opinion that the evidence in this case was not such as to justify the court in submitting to the jury the question whether it was negligence to equip a freight elevator with it.

But the most difficult question arises upon the instruction that—

"If Mr. Murdock invited the plaintiff to ride upon the elevator, he thereupon made the elevator, so far as the plaintiff is concerned, a passenger elevator, and became liable for the degree of care which is required of the carrier of passengers."

We are of the opinion that this instruction states the rule too broadly. It leaves out the other rule that, if plaintiff knew that this was not a passenger, but a freight, elevator, he assumed all the risks incident to carriage upon it. Owners are under no legal obligation to put safety appliances upon elevators not intended to carry passengers. Webb, Pass. & Freight Elevators, § 23; *Kern* v. *Refining Co.*, 125 N. Y. 50. Under the instruction given, defendants were bound to exercise the highest degree of care, and to use those appliances which experience had shown to be the most effective in securing the safety of passengers. When one knows that the elevator is designed for freight alone, he must be held to know

that it is not equipped with the same regard for safety that a passenger elevator is or should be. This is the rule applicable to freight trains upon railroads. *McGee* v. *Railway Co.*, 92 Mo. 208 (1 Am. St. Rep. 706); *Oviatt* v. *Railway Co.*, 43 Minn. 300. When, therefore, one is permitted or invited by the owner to ride upon a freight train or elevator, such owner does not guarantee that either is equipped with the most approved appliances in use upon those carrying passengers, and, if he has provided those which are in common use, and has exercised reasonable care in inspecting, repairing, and managing them, he has done all that the law requires.

The mere fact that the occupants of this block rode upon this elevator is no evidence that defendants intended. it for that purpose, even if such use were known to them.

4. The injury to the plaintiff was vigorously contested by the defendants, and they introduced expert testimony tending to show that the injury resulted from other causes. Medical experts were placed upon the stand, who gave their experience in such diseases, and their opinions that plaintiff's condition was not the result of the injury. Upon cross-examining these witnesses, counsel for the plaintiff called their attention to certain medical works, and, under objection and exception, read quite extensively to the jury. This was error, and we cannot hold that it was not prejudicial. The only circumstances under which medical books can be read in evidence are where the witness has based his opinions upon them, and has referred to them as authority. *Pinney* v. *Cahill*, 48 Mich. 584. The established rule is that it is incompetent to read from these books. Elwell (J. J.), Med. Jur. chap. 23; *Marshall* v. *Brown*, 50 Mich. 148; *People* v. *Millard*, 53 Mich. 75. This rule cannot be evaded upon cross-examination. *Marshall* v. *Brown* and *People* v. *Millard*, *supra*.

5. The court instructed the jury that—

"If you find that this cable and safety device and elevator were of an approved kind and make, and that it

was set up and put into operation by skillful and competent mechanics, and that it was carefully watched by defendants, and was carefully inspected from time to time by a competent inspector, and that no defects were or could have been discovered in the cable or safety device by a competent inspector, making a proper and careful inspection often enough to discover the defects in the same, if any, then the defendants have done all that the law would require," etc.

There were only two grounds of negligence, as already shown. There was no evidence tending to show that the elevator outside the safety device was not of an approved kind and make, or that it was not properly set up, or that it was not carefully inspected by a competent inspector. The objection to this charge was that it left it to the jury to determine negligence from facts upon which there was no dispute. Defendants were entitled to have the jury instructed definitely and clearly as to the two grounds of negligence.

6. Complaint is made that the court erred in refusing to instruct the jury that Mr. Murdock was on the elevator, and exercised the same care for plaintiff's safety that he did for his own, and that this was all the law required. There was no error in refusing this request. If he knew, or should have known, that there were defects, it was his duty to notify the plaintiff. Plaintiff was entitled to be informed as to the danger, if any, and then exercise his own judgment whether he would assume it. The fact that Mr. Murdock chose to assume it is no excuse for him when others are injured.

For the errors above noted, the judgment must be reversed, and a new trial ordered.

LONG, C. J., MONTGOMERY and MOORE, JJ., concurred. HOOKER, J., did not sit.