RELIANCE MANUFACTURING COMPANY v. LANGLEY.

[No. 5,871. Filed October 15, 1907. Rehearing denied January 31, 1908.]

1. APPEAL.—*Technical Objections to Record.—Complaint.—Sufficiency.*—Where a cause must be reversed upon other grounds, technical defects in the record, precluding the questioning of the complaint, will not be considered, and in the interest of both parties upon another trial, the sufficiency of the paragraphs of the complaint will be considered. p. 177.

2. PLEADING.—*Complaint.—Master and Servant.—Negativing Notice of Defects.*—In a common-law action by a servant against his master for personal injuries caused by defective appliances, the complaint must negative the servant's knowledge of such defects. p. 177.

3. SAME.—*Complaint.—Master and Servant.—Statutory Duty.*—A complaint by a servant counting upon the master's statutory liability, must allege facts showing that such master violated a statutory duty. p. 178.

4. MASTER AND SERVANT.—*Factory Act.—Defective Elevators.—Statutes.*—Section 8025 Burns 1908, Acts 1899, p. 231, §5, requiring owners and lessees of certain manufacturing, mercantile and industrial establishments (1) to enclose and secure elevator

shafts, where, in the opinion of the factory inspector, it is neces-
sary, (2) to provide proper trap or automatic doors for freight
elevators, if, in the opinion of the factory inspector, safety re-
quires it, and (3) requiring the factory inspector to inspect ele-
vators and require that they be kept safe, imposes the absolute
duty upon such owners and lessees to provide their elevators with
safety devices, only where so ordered by the factory inspector.
p. 178.

5.  STATUTES.—*Factory Act.—Construction.—Kindred Sister-State
Legislation.*—In determining whether §8025 Burns 1908, Acts
1899, p. 231, §5, imposes upon factory owners an absolute duty to
provide their elevators with safety devices, kindred similar legisla-
tion in other states, wherein it had been decided that an absolute
duty was not thereby imposed, should be given great weight.
p. 181.

6.  SAME.—*Factory Act.—Elevators.—Criminal Law.—Damages.*—
The violation of §8025 Burns 1908, Acts 1899, p. 231, §5, requiring
factory owners and lessees to provide certain precautions for the
safety of their elevators, when ordered by the factory inspector,
being penalized by a subsequent section (§8045 Burns 1908,
Acts 1899, p. 231, §25), constitutes a misdemeanor, and also sub-
jects such owners and lessees to a civil action for damages.  p. 181.

7.  WORDS AND PHRASES.—*"Shall."—Factory Act.*—The word
"shall," as used in §8025 Burns 1908, Acts 1899, p. 231, §5, provid-
ing that the factory inspector "shall" require that elevators be
kept in a safe condition, imports that they shall be where neces-
sary and practicable.  p. 181.

8.  APPEAL.—*Instructions.—Interrogatories.—Master and Servant.
—Assumption of Risk.*—The giving of an instruction that defend-
ant was under the statutory duty of providing safety devices on
the elevator used in its establishment, regardless of any order on
the part of the factory inspector, constitutes reversible error,
where the answers to the interrogatories show that plaintiff knew
of the defect.  p. 182.

From Porter Superior Court; *Harry B. Tuthill,* Judge.

Action by Isaac H. Langley against the Reliance Manu-
facturing Company.  From a judgment on a verdict for
plaintiff for $1,000, defendant appeals.  *Reversed.*

*Elmer E. Stevenson,* for appellant.

*Crumpacker & Moran* and *E. J. Bower,* for appellee.

HADLEY, J.—The appellee brought this action to recover
damages for personal injuries alleged to have been sustained

by him by the breaking of a rope cable of a freight hoist or elevator, and the falling of the car in the factory of the appellant where appellee was employed. The amended complaint upon which the case was tried is in two paragraphs. The negligence charged against appellant in each of said paragraphs was in using a rope that was old, worn out, frayed and rotten to sustain and move the car, and in failing to provide safety devices to prevent the falling of the car in the event of the breaking of the rope or cable. The first paragraph of the complaint averred that appellee had no knowledge of this defective and dangerous condition. The second paragraph contained no such averments. A separate demurrer was filed to each paragraph of the complaint, which demurrers were overruled. Answer by general denial, trial, and verdict and judgment for appellee.

It is earnestly contended by appellant that the court erred in overruling its demurrer to each paragraph of the complaint. In the consideration of this question we are met at the threshold with the technical objection of appellee that no question is presented by the record on this ruling of the lower court. In view of the fact that, in our opinion, this cause should be reversed on other grounds, we deem it unnecessary to pass on this technical objection, and, to avoid the question's arising in a subsequent trial, we deem it to the best interests of all parties to express our opinion upon the paragraphs of the complaint.

Without going into the averments of the first paragraph, it seems clear that it avers sufficient facts to show a common-law liability for negligence on the part of appellant and a cause of action in appellee, and the demurrer was properly overruled. The second paragraph is insufficient to show a common-law action, in that it does not aver that appellee had no knowledge of the defective conditions as set out in the complaint, and which are averred as negligent acts on the part of appellant.

It is not sufficient to show a statutory liability, for the reason that it does not show the violation of any statutory duty on the part of appellant. One who relies upon

3.   the statute must bring himself fully and clearly within all its provisions. *Laporte Carriage Co.* v. *Sullender* (1905), 165 Ind. 290.

The question, however, upon which this case must be determined is upon the twenty-fifth instruction given to the jury by the court upon its own motion over the objec-

4.   tion of appellant. The instruction was as follows:

"Under §7087e Burns 1901 it is made the duty of an employer of labor, who provides apparatus used for an elevator in his establishment, to keep the same in a safe condition, with proper safety devices whereby the cabs or cars will be securely held in the event of accident to the cable, rope or hoisting machinery thereof, and the statute makes it the duty of the state factory inspector to inspect, and requires that this be done. This statute makes a master guilty of negligence in failing to comply by providing such safety appliances, and, in the absence of contributory negligence, the servant may recover for injuries which he suffers, where the failure of the master to provide said appliances is the proximate cause of the injury; and the servant does not assume the risk of injury merely by knowledge upon his part of such violation of the statute and failure to comply therewith upon the part of the master. However, he must be free from contributory negligence." It is insisted that this instruction is erroneous, since neither the section of the statute referred to therein nor any other statute of this State arbitrarily imposes upon the owner, lessee or agent of a factory the duty of maintaining safety devices upon all elevators without regard to whether he has been so required or ordered by the factory inspector. The section referred to is as follows: "It shall be the duty of the owner or lessee of any manufacturing or mercantile establishment, laundry,

renovating works, bakery or printing office, where there is an elevator, hoisting shaft or well hole, to cause the same to be properly and substantially inclosed or secured, if in the opinion of the chief inspector it is necessary, to protect the lives or limbs of those employed in such establishment. It shall also be the duty of the owner, agent or lessee of each such establishment to provide, or cause to be provided, if in the opinion of the chief inspector, the safety of persons in or about the premises should require it, such proper trap or automatic doors so fastened in or at all elevator ways as to form a substantial surface when closed, and so constructed as to open and close by the action of the elevator in its passage, either ascending or descending, but the requirements of this section shall not apply to passenger. elevators that are closed on all sides. The chief inspector shall inspect the cables, gearing or other apparatus of elevators in the establishments above enumerated and require that the same be kept in safe condition with proper safety devices whereby the cabs or cars will be securely held in event of accident to the cable or rope or hoisting machinery, or from any similar cause.'' §8025 Burns 1908, Acts 1899, p. 231, §5. This section may be separated into three divisions: (1) The duty is imposed upon the owner, lessee or agent to have the elevator shaft or well hole properly and substantially enclosed and secured, if, in the opinion of the factory inspector, it is necessary for the proper protection of the employes. (2) The duty is imposed upon the owner, lessee or agent to have proper trap or automatic doors, so fastened in or at elevator ways, so constructed as to open and close by the action of the elevator in its passage, and so fastened in or at elevator ways as to form a substantial surface when closed, if, in the opinion of the factory inspector, safety requires it. The requirements of this division do not apply to passenger elevators enclosed on all sides. (3) The duty is imposed upon the factory inspector to inspect the cables, gearing and other apparatus of such elevators,

and require that they be kept in a safe condition and with proper safety devices.

The first two subdivisions impose certain specific prescribed duties upon the owner, lessee or agent of a factory. Under the conditions named, the last does not in terms impose any duty upon the owner, lessee or agent, but does impose a duty upon the inspector. If the last subdivision can be said to impose a statutory duty upon the owner, lessee or agent to maintain safety devices on all elevators of the class designated in the section, without regard to the order or action of the inspector, then the instruction in question was properly given. If, on the other hand, this subdivision does not have such force, then the giving of said instruction was error. The plain words of the clause in question enjoin upon the inspector the duty of seeing that the owner performs a common-law duty, and also invests him with authority to compel such performance. To say that the clause means more than this, necessitates the insertion of words not there, and the imposition of a duty not defined. The evident scope and purpose of this whole section is to protect the lives and limbs of persons in factories and workshops from accidents in and about elevators. But it is also evident the legislature intended that this protection should be reasonable and practical, and not arbitrary or oppresssive. Other duties with regard to elevators are clearly imposed upon the owners by this section, conditioned upon the discretion of the inspector. If the legislature had intended arbitrarily to impose upon all owners, lessees or agents the duty of maintaining safety devices on all elevators, it would have said so. There is nothing to indicate the omission occurred by inadvertence or mistake. The act seems to have been carefully drawn to cover the subjects intended. The explanation is found in the fact that prior to this enactment it had been frequently determined in the courts of this State and other states that on some elevators and hoists, under certain conditions and circumstances safety devices

were neither practical nor necessary. *Sievers* v. *Peters, etc., Lumber Co.* (1898), 151 Ind. 642; *Hall* v. *Murdock* (1897), 114 Mich. 233, 72 N. W. 150; *Kern* v. *DeCastro, etc., Co.* (1890), 125 N. Y. 50, 25 N. E. 1071; *Hoehmann* v. *Moss Engraving Co.* (1893), 23 N. Y. Supp. 787.

It is proper to presume that the legislature understood the obligations of the parties, as determined in these decisions, when it passed the act in question, and recognized that the rights and interests of all parties might best be protected if left in the hands of the factory inspector. The legislature did not deem it best arbitrarily to provide that the shafts should be enclosed or that automatic traps or doors should be maintained. We can see no reason why the legislature should depart from this rule with reference to safety devices, and, in the absence of any words expressing such intention, it would be traveling in realms of imagination to hold that the legislature intended to impose the duty of providing safety devices for all elevators, without regard to their character, practicability or necessity. The act is highly penal. By section twenty-five (Acts 1899, p. 231, §8045 Burns 1908) violations thereof are punishable by fine. We do not think it would be seriously contended by any one that an owner could be successfully prosecuted under the facts in this case for failure to maintain safety devices on an elevator of this character. And yet, if such act constituted a violation of any of the provisions of the statute, he could be so prosecuted. If he had not violated any of its provisions, there is no statutory liability for such failure. This seems to be an illustrative test of the section in question.

It is contended that the use of the word "shall" in the clause in question leaves the inspector no discretion, and amounts to a hard and fast mandate to the owner to provide safety devices in all cases. But this contention is not tenable. Section 8029 Burns 1908, Acts

1899, p. 231, §9, provides that all vats, pans, saws, etc., shall be properly guarded. But the Supreme Court has held that this language does not mean that all such machinery shall have guards, but that only such machinery should be so guarded as is practicable and necessary. *Robertson* v. *Ford* (1905), 164 Ind. 538.

In this case, quoting with approval from *Glens Falls, etc., Co.* v. *Travelers Ins. Co.* (1900), 162 N. Y. 399, 56 N. E. 897, the court say: " 'We think, however, that the legislature could not have intended that every piece of machinery in a large building should be covered or guarded. This would be impracticable. What evidently was intended was that those parts of the machinery which were dangerous to the servants whose duty required them to work in its immediate vicinity should be properly guarded, so as to minimize, as far as practicable, the dangers attending their labors. Human foresight is limited, and masters are not called upon to guard against every possible danger. They are required only to guard against such dangers as would occur to a reasonably prudent man as liable to happen.' " And the court further quotes from *Cobb* v. *Welcher* (1894), 75 Hun 283, 26 N. Y. Supp. 1068, as follows: "We do not understand the statute to make the factory man an insurer of the safety of his employes, or that it requires him to guard against extraordinary accidents which careful and prudent men could not foresee or anticipate as liable to occur."

There being no statutory duty upon appellant to maintain safety devices on the elevator in question, at least until so ordered by the factory inspector, the giving of said

8.  instruction was error, and, it being shown by answers to the interrogatories that appellee was aware of the absence of the safety devices and there being a question as to whether he had knowledge of the defective rope, this error cannot be said to be harmless.

Cause reversed, with instruction to grant a new trial.

Myers, Comstock, Rabb and Roby, JJ., concur. Watson, J., not participating.