# CASES

IN THE

# APPELLATE COURTS OF ILLINOIS.

## SECOND DISTRICT—DECEMBER TERM, 1895.

| 66 | 17 |
|---|---|
| 80 | 575 |

## Elgin, Joliet & Eastern Railway Company v. Chas. Docherty, Adm'r.

1. ORDINARY CARE—*Reckless Exposure.*—Where a party recklessly exposes himself to danger, and is killed, there can be no recovery of damages by his representatives.

2. MASTER AND SERVANT—*Injuries Sustained from Violation of Rules.*—An employe of a railroad company, while attempting to get upon a moving car in violation of the rules of the company, was killed. *It was held* that the company was not responsible.

3. SAME—*Duty of the Master as to Machinery.*—The law requires the master to use reasonable care to keep appliances in proper and safe condition for use when operated for the purpose for which they were intended, and when this is done the duty toward the employes is discharged.

Trespass on the Case.—Death from alleged negligence. Appeal from the Circuit Court of Grundy County; the Hon. CHARLES BLANCHARD, Judge presiding. Heard in this court at the December term, 1895. Reversed. Opinion filed June 1, 1896.

HALEY & O'DONNELL and WILLIAMS, HOLT & WHEELER, attorneys for appellant.

WM. MOONEY and S. C. STOUGH, attorneys for appellee.

MR. JUSTICE CRABTREE DELIVERED THE OPINION OF THE COURT.

This was an action on the case to recover damages for

the pecuniary loss sustained by the widow and next of kin
of Peter Christie, deceased, by reason of his death while in
the service of appellant, he having been run over and killed
by a train of cars belonging to appellant, on the 17th day
of April, 1894. The first trial, by a jury, resulted in a dis-
agreement, but upon the second trial a verdict was returned
for $2,500, and a motion for new trial being overruled,
there was judgment on the verdict, and the defendant
appealed to this court.

It appears from the evidence that deceased had been in
the employ of appellant as switchman for about three
years, working about the tracks and in the yards at Car-
bon Hill and Coal City. For a short time prior to the ac-
cident which caused his death he had been voluntarily
absent from the employment of appellant, but returned to
work for it again the day before he was killed. Various
coal mines were operated in the vicinity of Coal City, and
appellant's chief business in that locality consisted in haul-
ing coal cars to and from these mines. Cars of different
railroad companies, and of various patterns and forms of
construction, were handled in the yards where deceased
was employed, and were switched here and there on the
several tracks therein, as the necessities of the traffic and
business required.

About two o'clock in the afternoon of said 17th day of
April there were some forty "gondolas" or large coal cars,
mostly belonging to the Chicago and Northwestern Rail-
way Company, standing on a "Y" in the yard, and Mc-
Guire, the yard master, directed the deceased and his crew,
who were operating a switch engine, to move those cars
from the "Y" down toward No. 3 shaft, to get them out of
the way.

After throwing the switch so as to turn the train upon
the right track for the accomplishment of this purpose, the
deceased placed himself in the center of the track upon
which the train was approaching, and stood between the
rails until the moving train reached him, when he stepped
one foot upon the swinging brake beam beneath the car,

and at the same instant seized hold of the upright brake staff with his hands, using it as a hand-hold or lever to draw himself up, and onto the end of the car. The fastenings of the brake staff gave way, and he was precipitated under the wheels of the moving car and killed.

The negligence charged in the declaration, was a failure on the part of appellant to have the brake staff on the car in question, properly and securely fastened to the end or sill of the car, so as to furnish a safe hand-hold, or means of boarding the car, in the manner in which the deceased attempted to use it at the time he was killed, and also a failure to exercise due care in the inspection of the car to ascertain its defects.

The defense is, that the deceased was, at the time of the accident, guilty of such a wanton and reckless disregard of his own safety, and such a careless exposure of his life to great danger, that no recovery can be had against appellant on account of his death.

That the appellee must allege and prove, or at least, that it must appear from the evidence that the deceased, at the time of his death, was himself in the exercise of ordinary care for his own safety, or there can be no recovery, is a proposition about which there is no dispute and can not be. If the plaintiff's intestate came to his death by reason of his own contributory negligence, without which it would not have happened, then, even though it should appear that appellant had also been guilty of negligence, still there can be no recovery under the law as it stands in this State to-day, the doctrine of comparative negligence being no longer recognized as law by our courts. C., B. & Q. R. R. Co. v. Levy, 43 N. E. Rep. 357; 160 Ill. 385.

It becomes, therefore, extremely important to carefully examine the facts upon which appellee bases his claim to a right of recovery in this case. The car upon which deceased was attempting to climb when killed, belonged to the C. & N. W. Ry. Co. and was numbered 11897. Thomas B. Herbert, the car inspector of that company, testifies that he inspected this car at Turner on the morning of April 17th

(the day of the accident) and the only defect he found was the absence of a side bearing, which, it is admitted, had nothing whatever to do with the brake appliances. No other inspection was afterward made prior to the accident.

The car in question was an ordinary coal car, the general structure of which it is not necessary to particularly describe. The end sill or frame of the car, however, had a face of about eight inches, and the brake staff stood upright, a little to one side of the center of the sill. To fasten the staff, and hold it in its upright position, it passed through two clamps or brackets attached to the face of the car sill with lag screws, two in each clamp, which held the staff to its place, and a " U " bolt came down around the castings, and formed a socket for the bottom of the staff to rest in. These brackets or castings were about two and a half inches apart, resting against the sill. The " U " bolt extended below the sill of the car far enough to allow the brake chain to wind about the staff. The brake staff worked in a hole in the iron castings, and not against the bare wood of the sill. The brake staff was supplied at the top with an iron wheel the turning of which caused the brake chain to wind around the lower end of the brake staff, and thus bring the shoe of the brake in contact with the tread of the wheel or car truck.

From this description of the brake appliances it would appear that the end sill of the car acted the part of a fulcrum, while the part of the staff terminating in the wheel might be considered the long arm of a lever, and the end of the staff extending below the sill around which the chain wound would be the short arm of the lever.

The brake beam was hung under the car by iron hangers, and as we understand the evidence, there was from an inch to an inch and a half of play between the brake shoes and the tread of the wheels. The evidence, which is most satisfactory to us, shows that this brake beam was some twenty-two inches inwardly from the end, and under the car. That is, that the beam would be twenty-two inches inward from a plumb line dropped from the outer edge of the end sill.

·E., J. & E. Ry. Co. v. Docherty.

The evidence further shows that the car was supplied with hand-holds and stirrups, designed and intended solely, and for the express purpose, of being used by those having occasion to board the car, to assist them in mounting, and that this was the only appliance designed and furnished for that purpose.

These hand-holds and stirrups were placed on· each side of the car, near the end, on the outside left hand corner. The side-holds or hand-holds were about twenty-four inches long, running lengthwise of the car, and directly over the stirrup, which was about six inches deep, and could not have been more than two or two and a half feet from the top of the rail, and as the hand-holds were fastened to the sill of the car, and the floor of the car, which rested on the top of the sill, was only thirty-eight inches from the rail, the hand-holds could not have been more than thirty-four or thirty-five inches from the top of the rail, or within easy reaching distance of a man of ordinary height. This description is no doubt sufficient to a fair understanding of the facts of the case, so far as the car and its appliances are concerned, and we need not go into greater detail on that subject.

At the close of the testimony, a motion was made to take the case from the jury and direct a verdict for the defendant, which motion was denied by the court. An instruction was asked directing the jury to find the defendant not guilty, and this also was refused. In this, it is insisted, the court erred, and we are of the opinion the point is well taken. It seems to us that no amount of argument could satisfy the mind of a reasonable person that the deceased was in the exercise of ordinary care for his own safety at the time he came to his death. A bare statement of the facts is sufficient to show the contrary. Standing between the rails, in the center of the track upon which a train of forty cars was approaching him at a speed of some three miles an hour, propelled by what was to him an irresistible force, he met the car nearest to him, by putting out his foot and stepping upon a swinging brake beam, some twenty or

more inches inward from, and under the end of the car, and at the same instant grasping the brake staff and attempting to use it as a hand-hold to draw himself up by, and thus mount the car.    Any one of a number of accidents which might happen meant instant death.    If he missed his footing upon the brake beam, if it chanced to be out of order or the hangers were insufficient, if he failed to seize the brake staff at the precise instant his foot struck the brake beam, then on the happening of any one of these contingencies, or others which might be suggested, no human power could save him from sudden destruction.    And all this in the face of the fact that there were means provided whereby he could have mounted the car with perfect safety had he chosen to use them.    The hand-holds and stirrup on the sides of the car, as we have already seen, were designed for the express purpose of being used in mounting the car, and, in so using them, there was comparatively no danger, because, even if defective so as to give way when a man's weight came upon them, yet if he fell, it would be outside the rails, and there would be no liability of serious injury. Why the deceased chose this terribly hazardous method of mounting the car, rather than the safe one provided for him, is unaccountable, and almost incredible, and yet nearly every day some man loses his life by rashly encountering similar danger.    From the evidence in this case there can be no question that the deceased chose a dangerous, instead of a safe means of attempting to board the car, and that his death was the result of such voluntary choice. Under such a state of facts the authorities are full and complete that there can be no recovery.    We deem a citation of the cases in which this principle has been announced as entirely unnecessary.

It is to be observed further, however, there was an express order of appellant forbidding the boarding of engines or cars in the manner attempted by the deceased.    That order or rule was as follows:    "All persons are forbidden to board engines or cars while they are in too rapid motion. *Under no circumstances* must they stand on the track and

board the engines or cars while the same are approaching them." C. B. Ferguson, the agent of appellant at Carbon Hill, testified that he had a distinct recollection of giving the deceased a copy of the time card containing this rule or order.

It thus appears that the deceased, in attempting to mount the car in the manner adopted by him, was violating a known rule of the company, announced for the benefit of appellant's employes, including the deceased himself. This rule he took the responsibility of disregarding, when there was not the slightest occasion for it. He was aware, or from his long employment should have been aware, if at all observant, that there was a hand-hold and stirrup on the side of the car, outside the rails, and there was nothing to prevent him from using them with safety; but he chose to adopt a highly dangerous method of trying to board the car—a method expressly forbidden by the rule above quoted, whereby he lost his life, and appellant can not now be held responsible therefor.

An attempt was made to break the force of this rule, by the introduction of evidence tending to show that it was not uncommon for men in the employ of appellant in a similar capacity to that of deceased, to board cars in the manner attempted by him, and it is claimed the custom was so well established that deceased had a right to assume that the rule had been abrogated, because it had not been observed or enforced. This evidence went in under objection of appellant, and exceptions were saved to the rulings of the court in permitting it. Under the view we take of this case, we do not deem it necessary to discuss the propriety of the court's action in admitting this evidence. The deceased appears to have been a man of ordinary intelligence, and was the master of his own actions. Aside from any rules, the highest duty he owed to himself, and one of the duties which was due from him to his employers, was to avoid risk and danger. It was incumbent upon him, whether there was any rule upon the subject or not, to have selected the safe method of trying to mount the car, and

thereby avoid the unnecessary risk and hazard to which he exposed himself by the course he pursued.

In order to a recovery, however, in a case of this character, even if the deceased were in the exercise of ordinary care to avoid the accident which caused his death (which we hold he was not), still there can be no recovery, unless the evidence shows that the injury was caused by the negligence of the defendant, or occurred in consequence of a breach of some duty which it owed to the party injured.

As we have seen, the only negligence charged against appellant was in failing to have the clamps or castings holding the upright brake staff in place, properly secured to the sill of the car. Had the brake staff given way while being used as a brake by some person whose duty it was so to use it, there might be a foundation for this claim of negligence; enough, at least, to become a question of fact for the jury. But that was not the use to which deceased was attempting to apply it at the time of his death. There is no pretense, nor can there be, that this brake staff was designed as a handhold to be used in boarding the car. Its only purpose was to be used for applying the brakes to the wheels, to stop the car or slacken the speed. The evidence shows that the effect of turning the wheel at the top of the brake staff for the purpose of setting the brake, would be to force the staff inwardly against the sill of the car, and not outwardly, away from it, as would be the result if used as deceased attempted to use it. It may well be, that the fastenings were sufficient if the appliance were used as a brake, and entirely insufficient to stand the strain put upon them by a strong man weighing 160 pounds, having his feet braced against the brake beam, and using his whole strength in pulling away from the sill, as was the condition when it gave way with deceased. That others had used the brake staff as a hand-hold, makes no difference; it was not thereby converted into an appliance to be legitimately used in that way. Because the brake beam was sometimes used as a step in boarding the car, as deceased attempted to use it, did not convert it into a step for legitimate use as such, and there is

no more reason for saying that appellant was bound to keep the brake staff in safe condition to be used as a hand-hold than that it should keep the swinging brake beam in proper condition for a step. Neither of these appliances were designed for any such use, and the appellant discharged its duty to its employe when it used reasonable care to keep them in proper and safe condition for use when operated for the purpose for which they were intended. Jayne v. Sebenwaing Coal Co., 65 N. W. Rep. 971.

In the case of C., B. & Q. R. R. Co. v. Abend, 7 Ill. App. 130, the facts were that an engineer stopped his engine upon a bridge, and attempted to oil and examine the engine, and while so doing fell from the bridge. It was claimed the company was negligent in not providing a suitable platform to walk upon, and also in allowing the projection of spikes above the timbers of the bridge. In its opinion the court say: " The bridge was sufficient for the use for which it was intended. But it was voluntarily used by the engineer for a purpose not necessary and not required by the regulations of the company. While the master must use ordinary care to provide reasonably safe and fit appliances and structures for the use of the servant, yet he is not bound to provide against danger arising from the unnecessary use of such appliances and structures for purposes to which the same are not adapted and designed."

We think this language is entirely applicable in the case at bar. The deceased not only attempted to use the brake staff for a purpose to which it was not adapted, and for which it was not designed, but did so when there was no necessity therefor, in violation of a plain rule of the company, and under circumstances which any man of ordinary sense could see were fraught with great danger to his personal safety.

A careful examination of the evidence satisfies us that the verdict of the jury was unwarranted, and the court erred in not setting it aside. We think further that the court should have sustained the motion to take the case from the jury and direct a verdict for the defendant.

For the errors indicated the judgment will be reversed.

FINDING OF FACTS TO BE MADE A PART OF THE JUDGMENT.

We find the facts in the above cause differently from those found in the court below, as follows:

1. We find that the appellant was not guilty of the negligence charged in either count of the declaration in manner and form as charged therein.

2. We further find that the deceased, Peter Christie, was not in the exercise of ordinary care for his own safety in manner and form as appellee has averred in either count of the said declaration, but the deceased came to his death by reason of his own carelessness and want of ordinary care in attempting to board the car in the manner adopted by him, and that such want of ordinary care was the cause of his death.