(19 App. Div. 256.)

## WHITE et al. v. EIDLITZ et al.

(Supreme Court, Appellate Division, First Department.　June 25, 1897.)

1. MASTER AND SERVANT—APPLIANCES—WEIGHT OF EVIDENCE.
　　Proof that the foreman of a gang of laborers had instructed them to go to their work by using an elevator, in the use of which one of them is killed, does not, in the absence of evidence of the duties of the foreman, or of the extent of his authority to direct the movements of the men, tend to prove that the employer furnished the elevator for the men to ride on, or permitted them to ride on it.

2. SAME—RIGHT TO DISPROVE.
　　In an action to recover for an injury caused by an elevator, which it is alleged an employer has furnished for the use of his workmen, if the plaintiff gives evidence tending to show that he did so furnish it, the employer is entitled to show that he had given instructions that the workmen should not ride on the elevator.

3. SAME—DUTY OF MASTER.
　　An employer who furnishes an elevator for the use of his workmen is not an insurer of its safety, but is bound only to use reasonable care that it shall be in proper condition, and safe; and if the elevator is a proper machine, and becomes unsafe only upon being carelessly used, or upon some obstruction being put in its way, the employer is not liable, in the absence of proof that the unsafe condition is due to his own careless act, or has continued so long that he should have known of and remedied it.

Appeal from trial term.

Action by Charles H. White and others, administrators, against Otto M. Eidlitz and another.　From a judgment entered on a verdict for plaintiffs, and from an order denying a new trial, defendants appeal.　Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, WILLIAMS, INGRAHAM, and PARKER, JJ.

Treadwell Cleveland, for appellants.

T. M. Tyng, for respondents.

RUMSEY, J.　This was an action to recover damages from the defendants for their alleged negligence by reason of which the plaintiffs' intestate received injuries which caused his death.　The defendants, as it appears, were contractors engaged in erecting an addition to a large building in the city of New York.　Robertson was a bricklayer in their employ.　To do his work, it was necessary that he should go upon one of the upper floors of the building.　For that purpose, he, with five other men, got upon an elevator which was in the building.　As the elevator, going up, had reached the fourth floor of the building, it was obstructed by some planks that lay across the elevator hole.　The planks were caught upon the top of the elevator, which still continued to ascend for a short distance, when, by reason of the additional weight of the planks upon it, something gave way below, and the elevator began to fall.　The intestate, with others, jumped off, but for some reason, which is not disclosed by the testimony, he fell back into the elevator shaft after jumping, and after the elevator had fallen below him, and fell down the shaft upon the top of the elevator, which had reached the bottom, and was killed.

Upon the trial a very great number of exceptions were taken by the defendants' counsel, all of which we do not deem it necessary separately to consider. It will be sufficient in the decision of this case to lay down certain established rules which apply to cases arising upon similar facts. The theory of the plaintiffs' case was that the defendants had furnished this elevator for the purpose of enabling the men in their employ who were at work upon the building to go to the upper floors to begin their work, and that as a part of their duty they were bound to use reasonable care to see that this means of access to their work which the defendants had furnished was in proper condition, and reasonably safe for the purposes for which it was intended. The plaintiffs further insisted that the permitting of the planks to be across the elevator hole on the fourth floor was a negligent act, for which the defendants were responsible. To enable the plaintiffs to maintain this theory, it was necessary that they should prove, in the first place, that this elevator was furnished by the defendants for the purpose of carrying the men to their place of work, or at least that the men were permitted to ride upon it with the knowledge and consent of the defendants, or of some person who stood in their place in the building, so that the defendants were responsible for his acts. This was sought to be proved by testimony to the effect that one Walters, who was said to be the foreman of the bricklayers, being at the bottom of the elevator when the deceased and his companions were there, told them to get on the elevator, and go up to the upper floors. No other testimony was given from which it could be claimed that the defendants authorized the plaintiffs' intestate or any other man to ride upon this elevator. It appeared that Walters was the foreman of the bricklayers. There was no testimony other than that to show what his duties were. There was an entire failure of evidence to establish that he had been intrusted by the defendants with any right to control the operation of the elevator, or to direct the men to ride upon it, or to tell the men in what way they should go to their work. The fact that he was a foreman did not tend to show that he had any authority to represent the defendants in that particular, or in any other particular. The only inference that could be drawn as to his relations with the defendants from the fact that he was a foreman was that he was a co-employé of the intestate,—a little higher in rank, perhaps, but still having no more authority than he to give directions outside of his immediate duties. Mahoney v. Oil Co., 76 Hun, 579, 28 N. Y. Supp. 196; Loughlin v. State, 105 N. Y. 159, 11 N. E. 371. The court therefore erred in holding that the evidence that the intestate had been directed by the foreman to ride upon this elevator was sufficient proof that the master had furnished the elevator for that purpose, and the several exceptions upon that ground by the defendants were well taken. But upon that theory of the plaintiffs, if they were entitled to give evidence tending to show that this elevator had been furnished by the defendants for the transportation of the workmen, clearly the defendants were entitled to show, on the other hand, that instructions had been given that workmen should not ride upon the elevator,

.and that it was not intended for any such purpose. This was attempted to be done in various ways by the defendants' counsel, and he was not permitted to do so, and the several exceptions taken to the rulings of the court in that particular were equally well taken. Even if the defendants had furnished this elevator for the purpose of transportation of their workmen, they were not insurers of its safety. The only duty which they had in that regard was to use reasonable care that the elevator should be in proper condition, and safe for the transportation of the workmen. If the elevator was a proper machine, and became unsafe only upon being negligently or carelessly used, or because some obstruction had been put in its way, the defendants were not liable for any such negligence or carelessness, in the absence of proof that such unsafe condition had been caused by their own careless act, or that it had continued so long that they should have known of it, and had an opportunity to remedy it. Stringham v. Hilton, 111 N. Y. 188, 18 N. E. 870; Painton v. Railway Co., 83 N. Y. 7. Nothing of that kind was made to appear in this case. All that appeared was that in some way, which was entirely unexplained, these planks had been put across the elevator well upon the fourth floor. When it had been done, or by whom, or for what purpose, or how long it had continued, did not appear. On none of those points was evidence given. The trial court held that all this was immaterial, but that when it appeared that there were such planks across the elevator hole, the defendants were liable for that defect in the elevator, although it had not continued more than five minutes. The several rulings upon that subject made by the trial court were erroneous, and for them also the judgment should be reversed.

We do not examine the questions raised by the numerous other exceptions. It is quite possible that many of them will not arise upon a new trial. It is sufficient to say that for the erroneous rulings indicated in this opinion the judgment and the order denying the motion for a new trial must be reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.