KIERNAN v. GUTTA PERCHA & RUBBER MFG. CO.

(Supreme Court, Appellate Division, Second Department. October 12. 1909.)

1. MASTER AND SERVANT (§ 128*)—INJURIES TO SERVANT—SAFE PLACE—PURPOSE.

Where a master provides a place which is safe for the purpose intended, the fact that it is not safe when employed for other purposes is insufficient to render the master liable for injuries to servant resulting from such use.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 256; Dec. Dig. § 128.*]

2. MASTER AND SERVANT (§ 156*)—INJURIES TO SERVANT—DUTY TO WARN.

A master was not required to warn a servant of a dangerous exhaust pit in a pumphouse to which master was not required to anticipate that the servant would be required to go.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 311, 312; Dec. Dig. § 156.*]

3. MASTER AND SERVANT (§ 185*)—INJURIES TO SERVANT—FELLOW SERVANTS—DIRECTIONS.

The master is not liable for an injury sustained by the act of another employé who, without authority, express or implied, directed the injured employé to work in an unsafe place; the selection of such place being the act of a fellow servant, and not the master.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

4. MASTER AND SERVANT (§ 190*)—INJURY TO SERVANT—DIRECTIONS—AUTHORITY.

A bookkeeper in defendant's employ and whose duties were purely clerical had no authority to direct plaintiff, after unlocking the factory gate to admit materials, to place the key in a pumproom containing a dangerous exhaust pit into which plaintiff fell and was injured, such room not being designed for the use to which the bookkeeper directed plaintiff to put it without defendant's knowledge or assent.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 449–474; Dec. Dig. § 190.*]

5. MASTER AND SERVANT (§ 281*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE.

Evidence held insufficient to show that a servant when injured was in the exercise of ordinary care.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. § 281.*]

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Kings County.

Action by Patrick Kiernan against the Gutta Percha & Rubber Manufacturing Company. From a judgment for plaintiff, and from an order denying defendant's motion for a new trial,.it appeals. Reversed, and new trial granted.

Argued before JENKS, GAYNOR, BURR, RICH, and MILLER, JJ.

John C. Robinson, for appellant.

Martin T. Manton, for respondent.

BURR, J. There is only one question in this case upon which there is any substantial conflict of testimony, and that is as to the directions given by Penrod to the plaintiff. For the purposes of this appeal we must assume that the plaintiff's version is correct.

The facts may be briefly stated as follows: On the 31st day of December, 1906, the plaintiff was employed in the storeroom of the defendant. His duties were to weigh the goods as they came in and pile them away. He had been employed there for six years. During that time he had become thoroughly familiar with the entire situation of defendant's plant, and knew where its different buildings were and the purposes for which they were used. One of the buildings was known as the pumphouse. It was a small building or outhouse, and contained a pump which was to be used in case of emergency for purposes of extinguishing fire. The "trap exhaust of a five-inch steam line that came from the boilers to carry off the water" passed through this room. This discharged into a pit or hole about three feet square and three feet deep. The upper edge of the sides of this pit were level with the floor of the building, and were unguarded. The pit was to the left of the door by which the building was entered, and about a foot distant therefrom. No one made use of the building for any purpose except those persons connected with the machinist department, who were occasionally called upon to go in there. During the six years that plaintiff had been employed in defendant's factory he had never seen anyone go in or out of the building. Prior to the day that he was injured he had never entered it. On that day between half past 12 and 1 a boy told plaintiff that he was wanted at the office. Upon going there, he saw a man named Penrod. Penrod was employed in the office as assistant bookkeeper. He received the orders for goods that were to be made up by the defendant, and entered the same. There was a clerk in the receiving department known as the receiving clerk, whose duty it was to receipt for goods delivered. The plaintiff testified that Penrod "was the boss during the noon hour. He gave orders and instructions over the factory, and gave me orders and instructions at other times." He failed, however, to show the nature or character of such orders, or whether they emanated from Penrod· himself or were simply conveyed by him as a messenger for others, or that the officers of the defendant had any knowledge that he had ever given any orders. Both of the witnesses called by the plaintiff testified that they had never seen him giving any orders, that all they had ever seen him do was to act as bookkeeper and take orders for goods that came into the office. During the noon hour it may be assumed that the manufacturing part

of the establishment was not in operation, and any orders given would hardly have related to that.   Penrod's testimony was to the same effect as that of the witnesses called for the plaintiff, and there was an entire absence of any testimony from which the jury could infer that he had anything to do with the manufacturing or executive department of defendant's business.   On the day in question, between 12 and 1 o'clock, a man came to the gate at defendant's factory with a load of oil in barrels.   Penrod said to the plaintiff:

"Pat, take the key, unlock the gate, and leave the oil man come in, show him where to dump the barrels, leave the key in the pump room, sign his receipt, go back to your work in the storeroom.   I myself will lock the gate when he gets through."

Plaintiff opened the gate and let the man in, and then went to the pumproom to put the key there.   The day was dark and gloomy, and, when the plaintiff entered the pumphouse, the floor was covered with mist and steam, which he says came from a valve that was broken.   It was so thick and dark that he could not see where he was stepping. While he was groping about and feeling for a hook upon which to hang the key, he stepped into this pit, which at that time was full of steam and boiling water, and was severely scalded.

The only ground upon which it is sought to hold the defendant liable is that it failed to furnish the plaintiff a safe place to work.   The evidence not only fails to show that this pumphouse was designated or provided either as a place to work generally by those engaged in the conduct of defendant's business, or specifically as a place for the particular work in which the plaintiff was engaged at the time of his injury, or that the defendant contemplated that it should be so used. The evidence shows just the contrary.   There was no evidence that this was the usual or ordinary place where the key of the gate was kept, or that it had ever been kept there.   The plaintiff obtained the key at the office, and it is quite possible that Penrod told him to temporarily leave the key at the pumphouse to save him the trouble of walking back to the office with it.

The measure of the master's duty is affected by the purpose for which a place is to be used.   If a master provides a place or an appliance which is only to be used for a special kind of work, the fact that it is not safe when employed for other purposes is not sufficient to hold the master liable.   White v. Eidlitz, 19 App. Div. 256, 46 N. Y. Supp. 184; Kern v. De Castro and Donner Co., 125 N. Y. 50, 25 N. E. 1071; Teetsel v. Simmons, 88 Hun, 621, 34 N. Y. Supp. 972; E. J. & E. R. R. Co. v. Docherty, 66 Ill. App. 17.   For aught that appears, the defendant had warned those persons the performance of whose duties called upon them occasionally to enter this building of the particular dangers therein.   It was not called upon to warn others whose presence there it had never authorized and was not called upon to anticipate.   Neither can it be claimed, if the act of Penrod was negligent in directing the plaintiff to go to the pumphouse, that the defendant is responsible for this.   While it is true that a master cannot be relieved from liability to a servant who is injured because he has delegated to another servant the duty of providing a safe place to work and he has discharged that duty negligently, it is equally true

that a master cannot have a liability imposed upon him because some one of his employés without authority, express or implied, assumes to direct another employé to work in a place unsafe and unfitted therefor. In that case the selection of the place to work is that of the fellow servant and not of the master, and, if negligence exists, it is the negligence of a fellow servant, and not of the master. As we have before pointed out, Penrod's duties were purely of a clerical character, and to hold the defendant liable because he assumed, for a purpose entirely foreign to the proper discharge of his own duties, to tell the plaintiff to go to a place not designed for the use to which he directed him to put it, without the knowledge of the defendant or its assent, express or implied, would entirely nullify the rule of law respecting fellow servants.

Upon the question of plaintiff's contributory negligence, we think it extremely doubtful whether he has borne the burden which the law imposed upon him. The moment that he opened the door of the pumphouse, the presence of steam and mist indicated to him a dangerous situation. For him under such circumstances to enter a room with the construction and dangers of which he was entirely unfamiliar, and when it was impossible for him owing to the steam and mist to discover those dangers and guard against them, was not the exercise of that reasonable care which the law requires. Piper v. N. Y. C. & H. R. R. Co., 156 N. Y. 224, 50 N. E. 851, 41 L. R. A. 724, 66 Am. St. Rep. 560; Heaney v. Long Island R. R. Co., 112 N. Y. 122, 19 N. E. 422.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event. All concur.