### WELLS v. WESTINGHOUSE, CHURCH, KERR & CO.

(Supreme Court, Appellate Division, Second Department.  November 24, 1911.)

MASTER AND SERVANT (§ 185*)—INJURIES TO SERVANT—APPLIANCES.

 Where plaintiff was injured by the fall of a timber which he was assisting others to raise without the use of a gin pole in accordance with directions of his foreman, the master having furnished sufficient and suitable appliances for the prosecution of the work, the foreman's act in directing the laborers engaged therein to use other appliances which were unfit and dangerous was but a detail in carrying on the work, which could not be imputed to the master as actionable negligence.

 [Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 385–421; Dec. Dig. § 185.*]

 Hirschberg and Woodward, JJ., dissenting.

Appeal from Trial Term, Queens County.

Action by Frank E. Wells against Westinghouse, Church, Kerr & Co.  From a judgment for plaintiff and from an order denying defendant's motion for a new trial on the merits, he appeals.  Reversed.

See, also, 123 App. Div. 908, 107 N. Y. Supp. 1149.

Argued before JENKS, P. J., and HIRSCHBERG, BURR, CARR, and WOODWARD, JJ.

Frank Verner Johnson (Murray G. Jenkins, on the brief), for appellant.

W. J. Creamer (John B. Merrill, on the brief), for respondent.

BURR, J.  The judgment and the order denying defendant's motion for a new trial must be reversed.  The accident from which plaintiff's injuries resulted was due to an attempt to raise a heavy timber with insufficient appliances; but under the circumstances here disclosed the master is not responsible.

At common law, when a master has furnished sufficient and suitable appliances for the prosecution of the work, and, instead of making use of these, a foreman directs the laborers engaged therein to use other appliances, which are unfit and dangerous, the act of the foreman is but a detail in the carrying on of the work, and cannot be

imputed to the master so as to impose liability.  Desmond v. Foundation Co., 142 App. Div. 537, 127 N. Y. Supp. 70; Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725.  If not conceded, the great weight of the testimony establishes that the proper method by which to raise this heavy timber was to use a gin pole.

William H. Wells, a brother of plaintiff, called as a witness in his behalf, was the foreman in charge of the work.  He testified: "With regard to the gin pole, we had poles about this work at this time." Another witness called for the plaintiff, who was also a brother, and a fellow workman, testified: "There were plenty of poles for gin poles."  The plaintiff at first attempted to show that there was a lack of ropes proper to be used in connection therewith, and the witness William H. Wells at first testified that "there were no ropes around there that we could get."  But he immediately added, which was the conceded fact:

"We did get them, and raised this very pole, after the accident, with a gin pole.  They were there to get, only we didn't get it before the accident, but we got it afterwards."

There was some evidence that a hurried search in the storeroom failed to disclose any rope there, but it also appeared that there was an abundance of rope not in use in other places about the work, and the witness George Wells, who did obtain the rope after the accident, testified:

"When I got this rope, and got the gin pole, we had no difficulty in raising this post.  We probably could have got that rope before, if they give us time. We took time to get it afterwards because we didn't want another accident."

We think, then, that the evidence utterly fails to establish the want of poles which could be used for gin poles, or ropes which could be used in rigging the same.  The fact is that the night before the accident William H. Wells, the foreman, had instructed the workmen to "get everything ready on the job" of raising the pole, which he intended to do in the morning.  When he arrived in the morning, the things had not been secured.  There was then a hurried search for pike poles with which to raise the timber.  There seems to have been some difficulty in finding a sufficient number, and one of the workmen used instead thereof a piece of iron steam pipe.  While raising the timber in this way, the foot slipped over the mortice intended to secure it, and in attempting to lower the timber the piece of steam pipe slipped therefrom, the timber fell, and plaintiff was injured.  James Flanagan, one of the workmen, called as a witness by defendant, testified that, before starting to do the work, he said to the foreman:

"We ought to use the gin pole on raising that, and he said, 'No; the devil,' he said, 'put that thing up there.  I want to get that thing into shape, because I am pushed for this job, and I want to get finished with it.'"

Although the foreman was recalled in rebuttal by plaintiff, this testimony was not contradicted, nor its accuracy in any way called in question.  It is quite clear that the real cause of the accident was the determination of the foreman to use an improper method in raising

this pole and in attempting to use insufficient appliances in connection therewith, because it would take a little more time to pursue a proper method and obtain the appliances requisite therefor. Even if there was a deficiency of pike poles, under the circumstances here disclosed, the defendant may not be held liable therefor. The master who has provided appliances sufficient to enable work to be done in a proper method is not to be held liable because of a deficiency of appliances which the foreman in pursuing an improper method has elected to use. Kiernan v. Gutta Percha & Rubber Mfg. Co., 134 App. Div. 192, 118 N. Y. Supp. 893; Kern v. De Castro and Donner S. R. Co., 125 N. Y. 50, 25 N. E. 1071.

Judgment and order reversed and new trial granted, costs to abide the event.

JENKS, P. J., and CARR, J., concur.

HIRSCHBERG, J. (dissenting). I cannot concur in the decision which the court is making in this case. The learned counsel for the appellant stated on the argument that his appeal was based on the claim that there should have been a nonsuit, and I do not see how it can be said in any view of the case that there was nothing to submit to a jury.

The plaintiff's recovery is for damages in an action brought at common law against his employer for personal injuries alleged to have been sustained by reason of the defendant's negligence. The accident occurred in May, 1905, at the defendant's plant in the borough of Queens, in the construction of a coal crusher, the work being in progress under the supervision of the defendant's superintendent of carpenters, and the plaintiff was one of a gang of 18 men engaged in manual labor under the orders and supervision of the superintendent. On the morning of the accident a platform had been made as a base for the coal crusher structure, about 18 by 20 feet in size, and upon this foundation the carpenters were about to erect one of the corner posts. The post was a heavy, water-logged, 8 by 12 inch pine timber, 18 feet in length and weighing about 900 pounds. The plaintiff had been engaged in other work upon the premises, and, when called upon by the superintendent to aid in the work of lifting this heavy corner post, he knew nothing of the means provided for that purpose. The evidence leaves no room for doubt that the attempt to raise the post was made with insufficient appliances, and that the superintendent was unable to procure proper appliances for the reason that they were not upon the premises. The articles required for the purpose were known as either pike poles or gin poles. They were not to be had. The superintendent himself testified that he looked for some, and could not find them, and explained their absence by saying that they had been shipped away. Other men were sent for them, but could not find them upon the place, nor could any ropes be found suitable for the work, although men were sent to find them and made unsuccessful search for that purpose. While this evidence is contradicted to some extent, the fact remains that there was a conflict and dispute upon this leading

question, and the controversy could not be disposed of as a question of law. When the post was partly raised with the insufficient and inadequate appliances at hand, it fell by reason of their inadequacy, and by the fall caused the injuries of which the plaintiff complains.

The case was submitted to the jury in a charge to which no exception was taken by the defendant, the liability of the defendant being predicated, as stated by the court, upon "one sharp disputed issue, as to whether or not this defendant company did its duty and furnished to the plaintiff adequate, sufficient, and reasonably abundant and suitable tools, appliances, or instrumentalities for the doing of the work that was required of the plaintiff." It follows that the only question of law presented on the appeal is whether or not the defendant's motion for a nonsuit should have been granted.

In support of this contention, the appellant relies upon the proposition that the attempt to raise the post with the inadequate appliances at hand was the negligence of the superintendent in a mere detail of the work, and therefore the negligence of a fellow servant. The case of Vogel v. American Bridge Co., 180 N. Y. 373, 73 N. E. 1, 70 L. R. A. 725, is cited, among others, as authority for that proposition. That case, however, differs materially from the one at bar. In that case the accident occurred from the use of a rope which the men knew was not strong enough, but which the foreman insisted was strong enough. Moreover, in that case, it appears that sufficiently strong rope was on the premises furnished by the master, but was not used; the foreman preferring the rope which proved inadequate. The court held that the risk arising from the negligence or error in judgment of the foreman in the use of the rope was assumed by the workmen as incidental to the execution of the work in its details. The court distinguished the case of Vincent v. Alden, 75 App. Div. 615, 77 N. Y. Supp. 1142, affirmed 177 N. Y. 545, 69 N. E. 1132, saying (at page 380 of 180 N. Y., at page 3 of 73 N. E. [70 L. R. A. 725]):

"There, the chains, which could have been used to take the bridge girder from the flat car, were in a tool car seven to eight miles away, and the foreman borrowed one nearer by for the purpose. Here, the proper ropes were within the building, and therefore at hand. There the situation was as though the representative of the master had failed in the duty to furnish the suitable appliance for his workmen."

A similar case to the one at bar is presented in Pluckham v. American Bridge Co., 104 App. Div. 404, 93 N. E. 748, affirmed and without opinion, 186 N. Y. 561, 79 N. E. 1114. In that case a workman was injured by the breaking of a rope which was used in moving iron beams. The foreman instructed the workmen to use a rope which was too light to stand the strain to which it was to be subjected, no other rope being obtainable; and it was held that it was the unqualified and absolute duty of the master to exercise reasonable care to furnish a safe and suitable rope for the use of the workmen, and that he could not, by delegating the performance of that duty to another, exempt himself from liability for its nonperformance.

The liability of the defendant rests upon general and well-settled principles of the law of negligence. In none of the cases cited by

·Mr. Justice BURR was there an entire failure on the part of the employer to furnish satisfactory appliances for the work. The plaintiff's injuries herein were very severe and the verdict cannot be regarded as excessive; and the judgment and order should be affirmed.

WOODWARD, J., concurs.